UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Lance Wickner,

   Plaintiff,

v.

Julie Rose, Thomas Lundquist,
Katherine Klancher, Amanda Furey,
Nate Johnson, Jack Leritz,
Darien Menten, D. Rose, Vanderpool,
J. Bonrud, Tina Joseph, Aaron Koll,
Lorin Peterson, Logan Zuk, Mark Agurkis,
Darrel Jensen, Justin Martin,
James Martinez, Corinne Hoadley,
John Doe, Nancy Johnston, Unidentified
Grievance Coordinator, Debbie Thao,
Courtney Menten, and Department of
Human Services,

   Defendants.

Case No. 17-cv-1214 (DWF/DTS)

**REPORT AND RECOMMENDATION**

---

Lance Wickner, MSOP, 1111 Highway 73, Moose Lake, MN 55767, *Pro Se* Plaintiff

Anthony Noss, Office of the Minnesota Attorney General, 445 Minnesota St., Suite 1100, St. Paul, MN 55101, for Defendants

---

   Lance Wickner brings this lawsuit pursuant to 42 U.S.C. § 1983 challenging the constitutionality of the media possession policy of the Minnesota Sex Offender Program (MSOP) and its application to him under the First and Fourteenth Amendments. He also alleges he experienced retaliation for filing a previous lawsuit. Defendants moved to dismiss, and Wickner sought leave to amend his Amended Complaint. For the reasons

stated below, the Court recommends that Defendants' motions to dismiss be granted, and denies Wickner's motion to amend.

## FINDINGS OF FACT

Wickner is a civilly committed person residing at MSOP in Moose Lake, Minnesota. Amended Compl. ¶ 2, Docket No. 6. In April 2017 he sued DHS and Nancy Johnston, MSOP's executive director, in her official capacity, and numerous clinical therapists, security counselors, and clinical supervisors in their individual capacity,[1] challenging the constitutionality of MSOP's Media Possession By Clients policy[2] (media possession policy) on its face and as applied to him. Wickner's complaint requests injunctive and declaratory relief, attorneys' fees and costs, and punitive damages of $10,000 from each individual defendant. *Id.* at 1-3 (¶¶ 2-29), 29-30.

Wickner alleges that, between August 22, 2011 and May 30, 2012, actions under the media possession policy by MSOP staff violated his First and Fourteenth Amendment rights. *Id.* ¶¶ 75-130. He also alleges Thomas Lundquist retaliated against him for filing a previous lawsuit that named Lundquist as a defendant. *Id.* ¶¶ 131-47. Specifically, he alleges "Lundquist order[ed] a facility wide ban on all catalogs and pamphlets that sell photographs of women in lingerie and swimsuits in retaliation for the civil suit in Wickner v. Rose, et al. 12-cv-01397 DWF/JJK." *Id.* ¶ 136.

---

[1] Wickner's Amended Complaint, which was filed on May 19, 2017, does not explicitly state whether Courtney Menten is sued in her individual or official capacity. She is not included in the list of Defendants identified in ¶¶ 2-29 and is only mentioned in the retaliation cause of action against Thomas Lundquist in ¶¶ 140, 144, 147.

[2] The Amended Complaint attaches seven versions of the media possession policy with effective dates of July 13, 2007 (Policy No. 06603-ALL); March 5, 2013, October 1, 2013, December 3, 2013, December 2, 2014 (all under Policy No. 302.230); and August 4, 2015 and February 7, 2017 (both under Policy No. 420-5230). *See* Docket No. 6-1.

Wickner filed his previous lawsuit on June 12, 2012 against MSOP and most of the same individual defendants. As here, he alleged that staff were not enforcing the media possession policy in a constitutional manner. *See Wickner v. Rose, et al.,* District of Minnesota Case No. 12-cv-1397 (*Wickner I*).[3] That lawsuit was stayed three times in 2012, 2014, and 2015,[4] but was ultimately dismissed in November 2016. *See Wickner I* Docket No. 35 (Nov. 22, 2016 Order adopting Report & Recommendation (R&R)).

The present lawsuit was stayed on June 30, 2017 pending resolution of *Karsjens v. Jesson*, District of Minnesota Case No. 11-cv-3659, a class action lawsuit brought on behalf of all civilly committed persons in MSOP. Stay Order, Docket No. 7. The *Karsjens* lawsuit raised several constitutional challenges to Minnesota's civil commitment statute and various MSOP policies and operations, including the media possession policy. *See Karsjens v. Piper*, 336 F.Supp.3d 974, 978, 993-94 (D. Minn. 2018); *Karsjens* Third Am. Compl. ¶ 16.l., Count IX ("Unreasonable Restriction of Free Speech and Free Association in Violation of the First Amendment") ¶¶ 307-15, Noss Decl. Ex. 1, Docket No. 26-1. On August 23, 2018 the Court granted summary judgment to the defendants on the First Amendment claims in Count IX, which the class action plaintiffs did not appeal. *Karsjens*, 336 F.Supp.3d at 994; Notice of Appeal, Noss Decl. Ex. 8, Docket No. 26-1.

---

[3] The Court takes judicial notice of the public docket and court filings in that lawsuit. *See* Fed. R. Evid. 201(b) (judicial notice); *Zimmerman v. Bellows*, 988 F. Supp. 2d 1026, 1029 n.1 (D. Minn. 2013) (judicial notice of court docket). In addition, a copy of the *Wickner I* complaint is attached as Ex. 9 to the Anthony Noss Declaration, Docket No. 26-1.
[4] *See Wickner I* R&R at 2 n.2, *Wickner I* Docket No. 34.

The stay in this action was then lifted on October 22, 2018. Docket No. 9. On December 28, 2018 Defendants[5] filed motions to dismiss Wickner's Amended Complaint for lack of jurisdiction under Rule 12(b)(1) and failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Docket Nos. 20, 40. In response, Wickner moved to amend his Amended Complaint. Docket No. 29. He did not provide a redlined version showing the differences between his Amended Complaint and his Proposed Second Amended Complaint,[6] but elsewhere simply stated he "added new language throughout the complaint and added two new media policies." Pl. Br. 1, Docket No. 30. His 32-page Proposed Second Amended Complaint attaches almost 300 pages of exhibits consisting of eight versions of the media possession policy[7] [Docket No. 29-2], a 181-page list of media from the MSOP Permitted & Prohibited Media List [Docket Nos. 29-3, 29-4, 29-5], a 56-page MSOP Program Theory Manual (Feb. 2014) [Docket No. 29-6], and MSOP correspondence regarding his request for media review decisions from 2012 to 2016 [Docket No. 29-7].

Wickner also filed a memorandum opposing defendants' motion to dismiss, asserting that the motion "will resolve itself under the [proposed second] amended complaint" because the 2018 and 2019 versions of the media possession policy are

---

[5] The first motion to dismiss was not brought on behalf of James Martinez, who had not then been served, or Justin Martin, a former MSOP employee who has never been served with this lawsuit. *See* Motion at 1 n.1, Docket No. 20. Martinez filed a later motion to dismiss the claims against him for failure to state a claim under Rule 12(b)(6). *See* Docket No. 40.

[6] The document is titled "1st Amended Complaint" but would in fact be the second amendment of his original complaint.

[7] These are the same policies as were attached to the Amended Complaint [Docket No. 6-1] minus the 2017 version and plus the 2018 and 2019 versions.

"even more broad and vague" and have not previously been litigated. Pl. Br. 2, Docket No. 31.

## CONCLUSIONS OF LAW

**I.    Wickner's first Amendment Claims**

    **A.    Sovereign Immunity and Preclusion**

Wickner sued the Minnesota Department of Human Services (DHS) and MSOP Executive Director Johnston in her official capacity for alleged violations of his First Amendment[8] rights based on MSOP's media possession policy. His First amendment claims against DHS are barred by sovereign immunity, his claims against Johnston are barred by res judicata, and his claims against the other defendants are barred by collateral estoppel.

    **1.    Claims Against DHS**

As the Court stated in *Wickner I*, DHS is an agency of the State of Minnesota under which MSOP is operated, and the State has not waived its sovereign immunity for these claims. The *Wickner I* Court therefore dismissed with prejudice all claims against the state entity for lack of jurisdiction. *Wickner I* R&R at 13-15, 19, Order Adopting R&R ¶ 3.a.[9] Likewise here, the claims against DHS should be dismissed because sovereign immunity bars Wickner's lawsuit against the state agency regardless of the type of relief

---

[8] Although Wickner has also invoked the Fourteenth Amendment, any substantive due process claim is subsumed by his First Amendment claims. *See Albright v. Oliver*, 510 U.S. 266, 273 (1994) (when an Amendment provides an explicit textual source of constitutional protection, that Amendment, not the more generalized notion of substantive due process, guides the analysis).

[9] Case No. 12-cv-1397 Docket Nos. 34, 35. In *Wickner I* the named state entity defendant was MSOP rather than DHS, as the Court noted, but the sovereign immunity analysis is the same.

sought. *See Rose v. State of Nebraska*, 748 F.2d 1258, 1262 (8th Cir. 1984) (absent consent, the Eleventh Amendment bars a suit in which the state or one of its agencies or departments is named as the defendant).

### 2.    Claims Against Johnston

As here, Johnston was sued in her official capacity in *Karsjens*. *See Karsjens*, 336 F.Supp.3d at 974; *Karsjens* Third Am. Compl. ¶ 39, Noss Decl. Ex. 1, Docket No. 26-1. Wickner was indisputably a member of the plaintiff class of civilly committed persons residing at MSOP. *See Karsjens v. Piper*, 336 F. Supp. 3d 974, 978 (D. Minn. Aug. 23, 2018) (class consists of all patients currently civilly committed to MSOP pursuant to Minn. Stat. § 253B, the Minnesota Civil Commitment and Treatment Act). *Karsjens* upheld MSOP's media possession policy on its face and as applied to all members of the class, rejecting their First Amendment challenge. *See Karsjens*, 336 F.Supp.3d at 993-94. Wickner's claims against Johnston are thus barred by res judicata.

Res judicata (or "claim preclusion") bars relitigation of a claim when three elements are met: (1) the prior judgment was rendered by a court of competent jurisdiction; (2) the judgment was a final judgment on the merits of the claim; and (3) the same cause of action and the same parties or their privies were involved in both cases. *See Lane v. Peterson*, 899 F.2d 737, 742 (8th Cir. 1990). All three elements are satisfied here.

*Karsjens* raised several constitutional challenges to Minnesota's civil commitment statute and various MSOP policies and operations, including a claim that MSOP's media possession policy violated the class members' First Amendment rights. *See*

6

*Karsjens*, 336 F.Supp.3d at 993-94; Third Am. Compl. ¶¶ 307-15, Noss Decl. Ex. 1, Docket No. 26-1. The Court applied the modified *Turner* standard in considering whether MSOP's institutional policies, including the media possession policy, were "reasonably related to legitimate institutional and therapeutic interests." *See Karsjens*, 336 F.Supp.3d at 992-93 (citing *Turner v. Safley*, 482 U.S. 78 (1987)). The Court granted summary judgment to defendants on the class plaintiffs' First Amendment claims and specifically noted that "MSOP's media policy restricting access to certain objectionable content has been deemed constitutional within this District." *Id.* at 993-94 (citing *Banks v. Jesson*, Case No. 11-cv-1706, 2016 WL 3566207, at *8 (D. Minn. June 27, 2016) ("MSOP is constitutionally allowed to implement and enforce a policy which prohibits detainees from possessing items depicting nudity and visible genitals.")).

The *Karsjens* Court stated:

> "[T]he Court concludes that summary judgment is warranted on Plaintiffs' First Amendment claims in Count IX. In particular, the Phase One trial testimony of the Rule 706 Experts as well as caselaw evaluating the MSOP policies informs this Court's conclusions with respect to the policies challenged under this claim. **Plaintiffs have failed to raise a genuine dispute over whether Defendants' policies implicating speech and association are an unreasonable restriction on Plaintiffs' First Amendment rights as applied to the Class as a whole.** The Court therefore grants summary judgment to Defendants' on Count IX.

*Id.* at 994 (emphasis added).

As a member of the class in *Karsjens*, Wickner is bound by its outcome. *See Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 874 (1984) ("[U]nder elementary principles of prior adjudication a judgment in a properly entertained class action is binding on class members in any subsequent litigation."). The summary judgment on the First Amendment claims regarding the media possession policy was a

final judgment on the merits issued by a court of competent jurisdiction, and it was not appealed. *See* Notice of Appeal at 2 (specifically excluding Count IX from plaintiffs' appeal in *Karsjens*), Noss Decl. Ex. 8, Docket No. 26-1.

In the present action, Wickner's only references to Johnston are his factual allegations that through the years she made revisions to the media possession policy in her official capacity. Am. Compl. ¶¶ 27, 48 ("Defendant Nancy A. Johnston as executive director changed the media policy six different times."), 49, 58, 61, 67, 69, 71, Docket No. 6. His First Amendment claims in Counts I to X allege the media possession policy is unconstitutional because it is overly broad, punitive, and not reasonably related to therapeutic purposes. *See id.* at 19-29 (discussed more fully in the section below). These claims were litigated in *Karsjens* and are barred by res judicata.[10]

### 3.    Claims Against Other Individual Defendants

Collateral estoppel or "issue preclusion" bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid determination essential to the prior judgment even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). The doctrine requires that the issue "have been raised in the first proceeding by the party sought to be precluded and necessarily determined on the merits in a proceeding affording a full and fair opportunity to litigate the issue." *Simmons v. O'Brien*, 77 F.3d 1003, 1097 (no for 8th Cir. 1997).

---

[10] To the extent that Wickner has alleged claims against Johnston or others, that are based on policies adopted post-*Karsjens*, those claims are addressed in Section B, below.

As applied in the Eighth Circuit issue preclusion requires five elements: (1) the party sought to be precluded must have been a party, or in privity with a party, in the original lawsuit; (2) the issue sought to be precluded must be the same as the issue involved in the prior action; (3) the issue sought to be precluded must have been actually litigated in the prior action; (4) ) the issue sought to be precluded must have been determined by a valid and final judgment; and (5) the determination in the prior action must have been essential to the prior judgment. *Robinette v. Jones*, 476 F.3d 585, 589 (8th Cir. 2007). Applying these five factors to the instant case demonstrates that Wickner's First amendment claims against the individual defendants here are subject to issue preclusion.

Plaintiff was indisputably a class member in *Karsjens*. The *Karsjens* Court indisputably determined the constitutionality of the media possession policy, both on its face and as applied to all class members. The class members' First Amendment claims based on the media possession policy were actually litigated and determined by a valid and final judgment, which determination was essential to the *Karsjens* judgment. The mere fact that Wickner has, in the present action, chosen to pursue these same First Amendment claims against previously unnamed defendants is of no consequence. However, to the extent that Wickner's claims here purport to be individual claims and/or involve post-*Karsjens* media possession policies, those claims fail for the reasons stated below.

**B.   Failure to State an Individual Claim**

The *Karsjens* Court, though it rejected the class claims that "policies implicating speech and association are an unreasonable restriction on Plaintiffs' First Amendment

rights as applied to the Class as a whole," did not "foreclose committed individuals at the MSOP from advancing individual freedom-of-speech and association claims in separate litigation." 336 F.Supp.3d at 994 n.13. The *Karsjens* Court's analysis of the First Amendment claims expressly applied the modified *Turner* factors to the class claims raised and found they failed to pass muster. Post-*Karsjens*, to properly state an individual claim, Wickner must plead factual matters specific to him that, if true, would state a claim under the modified *Turner* factors. Under this standard Wickner must plead that the application of the media possession policy to him in particular was not reasonably related to "legitimate institutional and therapeutic interests."

Moreover, in pleading his individual claim Wickner must satisfy basic pleading requirements. To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead sufficient facts, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Although a *pro se* complaint is liberally construed, it must still contain specific facts sufficient to support its legal conclusions. *Kaylor v. Fields*, 661 F.2d 1177, 1183 (8th Cir. 1981). Thus, while a court accords deference to *pro se* pleadings, it will not supply facts that are not alleged that might support the plaintiff's claim. *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004).

Applying the foregoing to this action, it is clear that Wickner's Amended Complaint must be dismissed. Counts I through X of Wickner's Amended Complaint purport to challenge the constitutionality of MSOP's media possession policy on its face

and as applied. Am. Compl. at 19-29, Docket No. 6. The language in those Counts in essence re-states the generalized First Amendment challenge to the media possession policy that was already litigated in *Karsjens*. For example, Wickner asserts the "nature and application of the Media possession policy under Minn. Stat. § 246B.04, Subd. 2, is on its face . . . not reasonably related to or narrowly tailored to the purpose of treatment of civilly committed individuals and results in the implementation of a media policy that is <u>ambiguous</u>, overbroad and vague" [Count I]; the policy "does not provide fair warning . . . and is unconstitutionally vague" [Counts I, II]; "Defendants have implemented media policies which the plaintiff is subject to that are punitive in nature, and therefore not reasonably related to the purpose of the rehabilitation of sex offenders" [Counts I, II, III, IV, VI, VII, VIII, IX]; "The very fact that the MSOP settled its claims in the Kruger settlement demonstrates that Minn. Stat. § 246B.04, Subd. 2, has constitutional flaws and the treatment program unconstitutionally applies its definitions in the media possession policies that have been passed since 1-15-13." [Counts I, II, III, IV, V, VI, VII, VIII, IX]; the "definitions" regarding sexually explicit material and nudity are "vague" and "over broad" [Counts III, IV, V, VI, VII, VIII, IX] and violate his "constitutional right to receive sexually explicit communications" [Count V] and "to send out sexually explicit communications to those in the general public" [Count VI]. Though, in Counts VIII, IX, and X Wickner identifies particular types of media and specific titles whose inclusion under the media possession policy allegedly violates his constitutional rights he does not allege any *facts* that plausibly establish how the application was not reasonably related to his therapeutic interests. *Id.*

11

In addition, Wickner's Amended Complaint contains ten pages in which he recites the history of the Minnesota Civil Commitment and Treatment Act (MCTA) and related statutory provisions,[11] the Kruger settlement, and various iterations of the Media Possession Policy from 2007 to 2017, quoting policy language in several provisions. *See id.* at 3-13 (¶¶ 30-74). But nowhere in his Amended Complaint does Wickner allege the conduct of MSOP staff in applying the policy to him was different from their conduct in applying the policy to other class members. Nor does he allege anything particular to his own therapeutic needs or individual circumstances; or how the application of the policy to him caused, or that future application of the policy will cause, a particularized injury such that the policy was or is unreasonable and unconstitutional as applied to him.

Similarly, his request for relief focuses on invalidating the media possession policy as a whole rather than any relief particularized to him. He requests that the "Media Possession Policy be declared unconstitutional[] on its face [and] as applied," be "declared unconstitutionally overbroad, facially and as applied" and "unconstitutionally vague, facially and as applied," that the conduct alleged in his Amended Complaint be "declared illegal and in violation of the . . . constitution[]," and that the Court enjoin Defendants from violating his First and Fourteenth Amendment rights and "violating [his] rights to free speech, access to the media and to be free from unlawful seizures." *Id.* at

---

[11] Wickner asserts that Minn. Stat. § 246B.04, subd. 2 is unconstitutional, but only to the extent the statute is incorporated into and applied as part of the media possession policy held constitutional in *Karsjens. See* Am. Compl. "Claims for Relief" Counts 1 to IX at 19-28, Docket No. 6.

29-30. He asks the Court to enjoin Defendants from "confiscating commercially produced media, which society does not consider to be pornographic, and refrain from censoring the plaintiff's right to free speech" and order them to "refrain from confiscating any personally or commercially produced media, unless clearly pornographic with actual close up depictions of penetration, either orally, anally or vaginally, or sexual relations between a human being and an animal; or sadomasochistic abuse, child molestation, child pornography or is clearly illegal." *Id.* at 30.

Wickner's opposition brief, likewise, provides no facts specific to him to support a post-*Karsjens* individual claim. The brief contains only two substantive paragraphs, one of which states, in relevant part:

> [T]he MSOP Media Possession Policy, Policy 420-5230, is constantly being remade by the defendants and [] these new policies that the defendants are making take away from the constitutional rights of patients and go more towards deterrence and censorship which goes against the program's theory of treatment that it is crucial that clients have the three psychological needs that motivate people to initiate behavior and are essential for psychological health and well-being. They argue that these needs are universal, innate, and psychological, and they include the need for competence, the need for autonomy and the need for relatedness. Treatment that enables clients to make progress towards these goals will therefore have a greater chance of being personally relevant and meaningful to the client. These are crucial considerations in the treatment of high-risk sexual offenders. It is common that outside stakeholders, the lay public, and clients themselves view treatment as the primary responsibility of the program. In this mindset, treatment is something that therapists "do" to their clients. The findings above show that, although providing a sound treatment program is the responsibility of a treatment program and its staff, the ultimate responsibility for committing to and maintaining change lies with the client. Taking away a client's choice to make change by having outright bans regardless of individualized treatment, flies in the fact of the defendants' own theories of treatment and makes the treatment more detrimental to a client's psychological wellbeing.

Pl. Br. 2, Docket No. 31.

In short, Wickner has neither pleaded nor argued facts specifically related to his individual therapy or institutionalization that would properly raise an individual claim post-*Karsjens*. His assertions that the media possession policy is too restrictive, punitive, and not reasonably related to therapeutic purposes are the same broad First Amendment claims that were considered and dismissed in *Karsjens*. Though he has included specific examples of MSOP staff applying the policy to him in 2011 and 2012 (*see* Am. Compl. ¶¶ 75-130, Docket No. 6) these factual allegations merely establish the policy was in fact applied to him.[12] But the *Karsjens* Court understood that the media possession policy was being applied to individual class members, and it resolved their as-applied claims on a classwide basis. *See Karsjens*, 336 F.Supp.3d at 987-89. The *Karsjens* exception for individual claims is not a vehicle for class members to relitigate class-based claims in hundreds of separate "individual actions."

It is understandable that Wickner's First Amendment claims in Counts I to X are phrased in terms of a broad constitutional challenge to the media possession policy. After all, he filed this action in April 2017 before *Karsjens* held the media possession policy constitutional. But the fact remains, while Wickner has described the application of the media possession policy to him, he has not alleged any facts that make the application of the policy to him unreasonable, and thus unconstitutional, under *Turner*.

Because the Court finds that Wickner's challenge to the MSOP media possession policy is not based on facts or circumstances that differentiate it from the

---

[12] Most of these factual allegations are identical to those in *Wickner I. See Wickner I* Compl. ¶¶ 26-68, 75-77, 79, Noss Decl. Ex. 8, Docket No. 26-1.

class claims in *Karsjens*, he has not pleaded an actionable individual First Amendment claim.

## II.    Fourteenth Amendment Procedural Due Process

In addition to its First Amendment claim, Count VII also appears to allege a violation of Wickner's Fourteenth Amendment right to due process: the "MSOP policy violates the Due Process Clause because it denies the plaintiff the right to view incoming materials confiscated pursuant to the policy in order to appeal such confiscations." Am. Compl. at 25-26, Docket No. 6.

When considering a procedural due process claim, the Court evaluates whether the action complained of was arbitrary. *See Wolff v. McDonnell*, 418 U.S. 539, 558 (1972) ("The touchstone of due process is protection of the individual against arbitrary action of government."). The Eighth Circuit has held that the due process rights of persons civilly committed to MSOP must be viewed "in the context of that commitment and its accompanying restrictions." *Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006). A procedural due process claim has two steps. First, the Court determines whether the person has been deprived of a protected liberty or property interest. If so, the Court considers what process is due by balancing the specific interest that was affected, the likelihood that the procedures would result in an erroneous deprivation, and the institution's interest in providing the process that it did, including administrative costs and burdens of providing additional process. *Id.* Among the most important procedural mechanisms for avoiding erroneous deprivations are "[n]otice of the factual basis for a decision" and "a fair opportunity for rebuttal." *Id.* at 888 (quoting *Wilkinson v. Austin,* 545 U.S. 209, 211 (2005).

Wickner has not alleged facts that, if accepted as true, would establish a due process violation. His only due process complaint in Count VII is that the media possession policy permits MSOP staff to confiscate incoming material before he has seen it, and does not allow him to view it as part of his appeal of the confiscation. He does not explain how this fact alone makes the media review process and appeal procedures constitutionally inadequate.

Though phrased in terms of process, his claim is really a challenge to the essential premise of the media possession policy itself, which allows MSOP to restrict civilly committed persons' access to certain media content. His due process theory would gut the policy, as it would require MSOP to let him view material that the policy does not allow him to view, ostensibly to preserve a meaningful right of appeal. But Wickner is a civilly committed person residing in a sex offender treatment program facility, and the media restrictions must be considered "in the context of that commitment and its accompanying restrictions." *See Senty-Haugen*, 462 F.3d at 886; *see also Banks*, 2017 WL 1901408, at *9 (emphasizing the importance of context when MSOP confiscates media items containing images that "might be innocent, artistic, or innocuous" to society in general but are prohibited under the media possession policy applied to committed sex offenders). Wickner's due process argument would thwart the institutional interests and therapeutic purposes embodied in the policy.

Because Count VII does not plead a plausible claim that the confiscation procedures impairs Wickner's notice and opportunity to be heard, the Court recommends that his due process claim be dismissed.

### III.    Retaliation

Wickner contends that Defendant Lundquist retaliated against him for filing a civil rights lawsuit. Specifically, Count XI alleges that Defendant Lundquist "order[ed] a facility wide ban on all catalogs and pamphlets that sell photographs or women in lingerie and swimsuits in retaliation for the civil suit in Wickner v. Rose, et al. 12-cv-01397 DWF/JJK." Am. Compl. at 29, Docket No. 6. The *Wickner I* lawsuit was filed on June 12, 2012. Wickner here alleges that on July 31, 2013 Defendant Thao told Wickner that "she received instructions from her supervisor defendant Thomas Lundquist that all order catalogs of photos of women in lingerie and swimsuits will be prohibited material." *Id.* ¶ 134. Although his facts section entitled "Retaliation" describes conduct by several MSOP staff, *see id.* ¶¶ 131-47, his retaliation claim in Count XI is only directed at Lundquist.

In the prison context, the Eighth Circuit has held that government officials may not retaliate against an inmate for filing a legal action in the exercise of his constitutional right of access to the courts. *Goff v. Burton*, 7 F.3d 734, 736 (8th Cir. 1993). Courts have applied the same standard when MSOP's civilly committed persons bring a retaliation claim. *See Beaulieu v. Ludeman,* 690 F.3d 1017, 1024-25 (8th Cir. 2012) (lawsuit alleging DHS officials and MSOP staff retaliated against civilly committed persons for filing a § 1983 lawsuit). To establish a § 1983 claim for retaliation in violation of the First Amendment, a plaintiff must allege he engaged in a protected activity, the defendant responded with an adverse action that would "chill a person of ordinary firmness" from continuing that activity, and the plaintiff's protected activity motivated the defendant's

adverse action such that the defendant would not have taken the action but for the retaliatory motive. *Id.* at 1025.

The Court finds Wickner has not pleaded sufficient facts to state a plausible claim that Lundquist retaliated his 2012 lawsuit by ordering a facility-wide ban on catalogs and pamphlets that sell photographs of women in lingerie and swimsuits. There is no question Wickner satisfies the first element of a retaliation claim, because filing his lawsuit was protected First Amendment activity. However, it is questionable whether restricting such images in the MSOP facility qualifies as the sort of adverse action by Lundquist that satisfies the second element. Restricting or prohibiting those images would seem to fall within the normal scope of implementing the media possession policy. It is also not clear from the Amended Complaint whether Lundquist had the authority to impose a facility-wide ban or whether, if he did give such an order, he was doing so to carry out the policy. The Amended Complaint says Executive Director Johnston is the one who made media possession policy revisions over the years. Am. Compl. ¶¶ 27, 48-49, 58, 61, 67, 69, 71.

The Amended Complaint also states that images of women in swimsuits were already restricted to some extent, though not "banned," before *Wickner I* was filed in June 2012. Wickner states that 80 photos of women in swimsuits sent to him in the mail on four different dates in April and May 2012 were confiscated, deemed "counter-therapeutic," and then returned to him. *Id.* ¶¶ 114-26. If images of women in swimsuits and lingerie were then prohibited altogether in the facility after June 2012, rather than deemed counter-therapeutic with respect to Wickner individually (or to others

individually), that change is insufficient to constitute an adverse action under the second element of a retaliation claim.

More importantly, the Court sees little support for the third element that the action would not have been taken absent Lundquist's retaliatory motive. The Amended Complaint offers little more than the timing of the 2012 lawsuit and the mere conclusion of Lundquist's retaliatory motive. Wickner has not pleaded facts to support an inference that images of women in swimsuits and lingerie would have been treated or classified differently under the media possession policy but for Lundquist's retaliatory motive.  At best, Wickner's allegations support only a possible and not a plausible claim of retaliation. Accordingly, the retaliation claim in Count XI should be dismissed.

## IV.   Wickner's Motion to Amend

Wickner seeks leave to amend his Amended Complaint to plead First Amendment claims under the 2018 and 2019 versions of the media possession policy that post-date the *Karsjens* summary judgment. However, his memorandum has failed to identify or explain any material difference between the media possession policy upheld in *Karsjens* and these later iterations of the policy. *See* Docket No. 30. Moreover, he has not alleged any instances in which the 2018 or 2019 policies were applied to him. He did not present any facts or argument to support his proposed amendment, stating only that he "added new language" and "two new media policies" to his Proposed Second Amended Complaint. Pl. Br. 1, Docket No. 30.

Defendants have opposed his motion to amend, arguing that the amendment would be futile because it would not survive a motion to dismiss, largely for the same reasons Defendants argued in their motion to dismiss. Def. Br. 3-4, Docket No. 33.

Wickner filed a short reply brief that merely asserts that the volume of media titles prohibited in the updated policy represents a substantial change from the policy litigated in *Karsjens*. *See* Pl. Reply Br. 4, Docket No. 47. He also asserted (in his opposition brief to Defendants' motion to dismiss) that inclusion of the new media possession policies in his proposed amendment would "resolve" Defendants' argument that he cannot relitigate claims that were decided in *Karsjens*: "This issue will resolve itself under the amended complaint that the plaintiff is requesting as the Defendants have passed a new media possession policy that is even more broad and vague that it will prohibit large swaths of media without review, and has not been litigated on any level or by any court." *See* Pl. Br. 2, Docket No. 31.

The few sentences in Wickner's legal briefs do not persuade the Court that justice requires granting his motion to amend under Rule 15. He does not identify any conduct by Defendants after December 4, 2018, the effective date of the earlier of the two media policies that Wickner seeks to add to this lawsuit. To the extent he seeks a facial challenge to these policies, his mere conclusory assertions (that these policies are "even more vague and overly broad") fall short of the standard necessary to state a claim that would survive a motion to dismiss under Rule 12(b)(6). To the extent Wickner purports to assert an as-applied challenge to the new policies, he has failed to plead a plausible individual claim that satisfies the *Turner* standard. In short, Wickner's proposed amendment is futile and Wickner has not established that the interests of justice would be served by allowing his amendment. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").

## ORDER

IT IS HEREBY ORDERED that Wickner's Motion to Amend [Docket No. 29] is

DENIED.

## RECOMMENDATION

IT IS HEREBY RECOMMENDED that:

1.      Defendants' Motions to Dismiss [Docket Nos. 20, 40] be GRANTED.

2.      All claims against Justin Martin be dismissed without prejudice for failure

to effect service.


Date:  July 3, 2019                                    s/David T. Schultz
                                                       DAVID T. SCHULTZ
                                                       United States Magistrate Judge


## **NOTICE**

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).